[Civil No. 1078.    Filed March 20, 1909.]

[100 Pac. 957.]

## THE WORLD'S FAIR MINING COMPANY, a Corporation, Plaintiff and Appellant, v. FRANK POWERS and JOSEPHINE POWERS, Defendants and Appellees.

1. MINES AND MINERALS—CONTRACTS FOR SALE—DEPENDENCE OF CONDITIONS.—A contract to sell mines allowed the purchaser to take possession, required him to deposit net proceeds of ores in a bank within fifteen days after receipt, to be applied on the purchase price, and provided for a return of the deed placed in escrow on his failure to make such payment. *Held*, that the contract was entire, and that the purchaser's right to remain in possession depended upon payment of the proceeds of ore as required; and hence, in suing for damages caused by dispossession, the purchaser was bound to show performance of that condition, or failure and reasonable excuse for nonperformance.

2. CONTRACTS—CHARACTER OF PROMISES—DEPENDENT STIPULATIONS.— In the absence of clear language to the contrary, promises forming the consideration of a contract, if doubtful, will be *held* to be concurrent or dependent and not independent.

3. SAME—DEPENDENT COVENANTS—PERFORMANCE.—Under a contract involving mutually dependent covenants, one party cannot recover for a breach without averring and proving performance on his part, or impossibility of performance through facts constituting an excuse.

4. ATTACHMENT—WRONGFUL ATTACHMENT—REMEDY.—The remedy for damages caused by wrongful attachment is an action on the bond.

5. INJUNCTION—WRONGFUL INJUNCTION—REMEDY.—The remedy for damages caused by a wrongful injunction is an action on the bond.

6. MINES AND MINERALS—CONTRACTS—BREACH—EXCUSE.—Under a contract to sell mines entitling the purchaser to possession and requiring him to apply the net proceeds of ores on the purchase price within fifteen days after their receipt, the purchaser in suing for dispossession on nonpayment of proceeds could not show attachment proceedings by the vendor unless they prevented a payment.

7. SAME—EVIDENCE—ADMISSIBILITY.—Under a contract to sell mines entitling the purchaser to possession and requiring him to apply net proceeds of ores on the purchase price within fifteen days after their receipt, the purchaser in suing for dispossession on nonpayment could not show attachment proceedings by the vendors, where the attachment was not pleaded as an excuse for nonpayment.

APPEAL from a judgment of the District Court of the First Judicial District, in and for the County of Pima. John H. Campbell, Judge. Affirmed.

The facts are stated in the opinion.

Appeal taken to supreme court of the United States.

Frank H. Hereford, and F. E. Curley, for Appellant.

"A condition precedent is one which must happen before either party becomes bound by the contract." *Jones* v. *United States,* 96 U. S. 24, 24 L. Ed. 644; 2 Words and Phrases, p. 1400.

The pleadings of both parties as well as the evidence shows that the plaintiff and its predecessors in interest had for months been in possession, working and performing under the contract.

"A condition which qualifies or defeats the plaintiff's claim, being a condition subsequent, may be safely ignored by the plaintiff in his pleading." 4 Ency. of Pl. & Pr., pp. 627, 628.

"In pleading the performance of a condition precedent in a contract it shall not be necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part, and if such allegation be controverted, the party pleading shall establish on the trial the facts showing such performance." Ariz. Rev. Stats., p. 427, par. 1283.

"A party cannot rescind a contract and at the same time recover damages for his nonperformance." *Anvil Min. Co.* v. *Humble,* 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814, 18 Morr. Min. Rep. 98; *United States* v. *Behan,* 110 U. S. 338–347, 4 Sup. Ct. 81, 28 L. Ed. 168; *New York L. & E. W. R. R.* v. *Winters,* 143 U. S. 60, 12 Sup. Ct. 356, 3 L. Ed. 71; *United States* v. *Peck,* 102 U. S. 64, 26 L. Ed. 46.

Eugene S. Ives, and S. L. Pattee, for Appellees.

Appellant's obligation to deposit the money was a condition precedent, and it must allege and prove the fulfillment of the condition or a legal excuse for its nonfulfillment. "When the terms or covenants in an agreement are mutual or dependent or concurrent, the plaintiff must aver and prove performance or at least an offer to perform on his part." 9 Cyc. 720, and numerous cases cited in note 46.

Appellees had the right to rescind the contract and dispossess appellant for nonperformance. "The plaintiff denying the defendant's right to rescind and asserting that the contract was still in force was bound to show such performance on his part as entitled him to demand performance on their part, and having failed to do so, cannot maintain this action." *Norrington* v. *Wright,* 5 Fed. 768, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366.

KENT, C. J.—Frank and Josephine Powers, owners of a certain group of mines, entered into a contract with one Ferguson for their sale, under the terms of which Ferguson or his assigns were to make the payment therefor within a specified time, and in the meantime to have possession of the property and to operate the same. Ferguson was to do a certain amount of work per day, to reduce the ores, and to deposit the net proceeds therefrom derived by him in a bank to the credit of the Powerses, to be applied on the purchase price. By an escrow agreement under which the deed for the property was deposited with a certain bank, it was provided by the parties that, upon demand thereunto by the Powerses to the bank, the bank should ascertain whether Ferguson had deposited the net proceeds from the ores within fifteen days after their receipt by him from the smelter, and if such deposit was found not to be made, then the bank was to return the deed to the Powerses. The World's Fair Mining Company subsequently succeeded to Ferguson's interest in the contract, went into possession, and operated the mines under the contract. On June 6, 1904, the company received several thousand dollars proceeds from ores smelted, which, on June 11th, the Powerses attached in an action brought by them on the ground that the company was intending to convert them to its own use contrary to the terms of the contract, and at the same time obtained a temporary injunction against the company restraining it from shipping other ores. The injunction was shortly after dissolved, but the attachment remained in force. On June 25, 1904, the Powerses dispossessed the company by forcibly taking the possession of the mines from it. The company thereupon brought this action for damages for the breach of the contract by the Powerses.

The complaint set up the contract, a subsequent modification thereof, and the escrow agreement; the acquisition by the plaintiff of Ferguson's rights under the contract, the institution of the suit by the Powerses, the attachment and injunction therein; alleging that such suit was wrongfully brought and for the purpose of preventing the company from obtaining the benefits of the contract, and to harass and annoy it; alleged that at the time the attachment was served the company owed the Powerses nothing; that, by issuing the attachment the company was made to fear that if it brought any other moneys into the territory for the purpose of carrying on its operations under the contract, such moneys would also be attached; that the attachment and injunction injured the company's credit and crippled the company's business, and impeded its efforts to work the mines. The complaint further alleged "that, when the plaintiff had finally succeeded in overcoming the conditions occasioned by the wrongful and unlawful acts of the defendants," and on July 25, 1904, the Powerses forcibly entered into possession of the mines and deprived the company of the possession thereof and the right to work them, thereby rendering the contract valueless to the company. The complaint then alleged the damages suffered, and the amount thereof, and prayed judgment therefor.

The answer, while admitting the execution of the agreements, denied generally the allegations of the complaint; alleged that neither the plaintiff nor its predecessors in interest had complied with the conditions of the contract; alleged that the plaintiff and its predecessors in interest had retained and converted to their own use certain proceeds from the reduction and sale of the ore to which the defendants were entitled under the terms of the contract; alleged that the attachment and garnishment set forth in the complaint was necessary by reason of the intention of the plaintiff to use the funds and so to convert the proceeds of the ore due to the defendants to its own use; and further alleged improper and wasteful management of the mines by the plaintiff, and prayed judgment dismissing the complaint.

The plaintiff, for reply to the answer, denied that at the time of the attachment it owed all of the money attached by the Powerses, and alleged that it was not its duty to make payment of such amount as it did owe on the date of said attach-

ment, to wit, the eleventh day of June, 1904, but that it was not its duty to make such payment until the twentieth day of June, 1904; that on the 11th of June, the Powerses instituted the suit referred to in the complaint, and caused the money to be attached with the purpose and object of endeavoring to break the contract, and for the reason that the Powerses thought that by instituting the action and causing the attachment and injunction to issue, through the injury to the company's credit, it would be unable to carry out its contract with the Powerses. The reply further alleged "that, finding that the plaintiff still endeavored to continue under the terms of their said contract, the defendant Frank Powers, for himself and the other defendant, with force and arms entered upon the mines described in the amended complaint, and took forcible possession thereof, with the intent and object to wrongfully terminate said contract and to deprive plaintiff of the profits thereof."

Upon the trial, and at the close of the plaintiff's case, the court directed a verdict for the defendants, and from the judgment entered thereon and the denial of a motion for a new trial, the plaintiff has appealed.

The only assignments of error which are properly before us upon the record pertain to the action of the trial court in directing a verdict for the defendant, and in refusing to permit the plaintiff to introduce in evidence the record of the proceedings in the injunction and attachment suit brought by the Powerses against the company.

Pending the payment of the purchase price the contract allowed the company to go into possession and operate the mines. This it did. The contract further provided that the net proceeds received from the ores during such period should be deposited to the credit of the Powerses. No time when such deposit should be made was specified in the contract. By the escrow agreement the time was fixed at a time within fifteen days after their receipt by the company. By the 20th of June, 1904, therefore, under the evidence in the case, the company was required to make the deposit of the proceeds received by it on June 6th. The evidence showed that such deposit was not so made. Was this condition, to wit, that the company should deposit the proceeds realized from the ore, a condition mutual and dependent, or one which was independent of the

XII Ariz.—19

company's right to possession, If the former, it was incumbent on the plaintiff to allege and prove performance thereof, or failure and reasonable excuse for nonperformance; if the latter, such allegation and proof was not necessary. Viewing the contract as a whole, it seems plain that it was an entire, not a severable, contract; that the undertakings on each side were mutual and dependent upon each other, and that the right of the company to remain in possession during the life of the contract was dependent upon its fulfilling its obligation to account for and turn over the proceeds derived by it from the reduction of the ores; and, this being so, the company came within the rule of law that, in the absence of clear language to the contrary, promises which form the consideration, if doubtful, will be held to be concurrent or dependent, and not independent, and that where covenants are mutually dependent, one party cannot recover without averring and proving performance on his part of the conditions to be by him performed, or without averring and proving impossibility of performance by reason of facts constituting an excuse. *Buchanan* v. *Layne,* 95 Mo. App. 148, 68 S. W. 952; *Dermott* v. *Jones,* 23 How. 220, 16 L. Ed. 442; 9 Cyc. 642, 643, and 719, and cases cited.

In the complaint in the case before us there is no allegation of the performance of the particular condition in question. There is no general allegation of performance on the part of the plaintiff of the conditions of the contract on its part to be performed, such as is permitted by our statute. There is no allegation either of nonperformance or of excuse for nonperformance; the complaint is silent as to any act of the company in compliance on its part with the terms of the contract, further than the allegation that it was in possession of the mines and of certain ores in process of shipment therefrom. The allegations in the complaint with respect to the attachment suit nowhere state or suggest that thereby the company was prevented from depositing the ore proceeds or from performing any obligation on its part to be performed under the contract. So in the plaintiff's reply, even though by the answer the failure of the company in this respect was directly averred, there is no direct allegation that the attachment proceedings prevented in any manner the company from depositing the ore proceeds, except such as might be inferred from

.the allegation that the attachment covered all of the company's personal property in the territory; and this inference that the property of the company in the territory was the only property of the company is negatived by the allegation of the complaint that the attachment suit caused the company to fear similar proceedings against any other funds it might bring into the territory.

With the pleadings in this condition, the plaintiff offered upon the trial to put in evidence the record of the attachment suit. The offer was refused by the court. It is to be borne in mind that this is not an action for damages by reason of the attachment or injunction issued. If damages were sustained by the company by reason of that suit, the remedy is upon the bonds therein given, and such remedy is not sought here. This is an action for breach of the contract by the Powerses, and it is not claimed and cannot be claimed that the attachment suit constituted such breach, for thereafter the company continued to work the mines, and the detrimental effect, if any, upon the company of the institution of the attachment suit, had been overcome by the company prior to the commencement of this action, as is shown by the complaint itself, wherein it is alleged, ''but that when plaintiff had finally succeeded in overcoming the conditions occasioned by the wrongful and unlawful acts of defendants, and on or about the twenty-fifth day of July, 1904, the defendants unlawfully and wrongfully, and with force and arms, entered in and upon the possession of the said mines and mining claims.'' The pleading and proceedings in the attachment suit were not material, therefore, except as they might serve as an excuse for the company for the nonpayment of the ore proceeds; but it is evident that the institution of such suit in itself was not a legal excuse for nonperformance, unless such suit and the resulting attachment did, as a matter of fact, prevent the payment. If it did so actually prevent the payment, the evidence was clearly material; if it did not so actually prevent it, the institution of the suit itself and the issuance of the attachment afforded no excuse, and the evidence offered was immaterial. The difficulty with respect to the admission of the evidence is that there is no allegation in the plaintiff's pleadings to support the contention that such suit did prevent performance and hence render the evidence admissible. That this was the

difficulty the trial court found is shown by the extract from the record, following the offer, which we quote:

"The Court: I think that is material if it is offered for the purpose of showing why you did not make payment of the amount due under the contract.

"Mr. Hereford: That is one of the reasons, if the court please.

"The Court: If that is an excuse for nonperformance—if you offer it for that purpose—

"Mr. Hereford: It is for that, among other purposes.

"The Court: I think this, that if you are required to pay a certain sum of money under your contract on a certain day, and in order to prevent you from doing that they garnished and attached the money wrongfully, then I think you are entitled to show that fact as an excuse for not paying the money on that day. . . .

"Mr. Ives: I object to it on the grounds as stated. We object to it on the grounds that it is immaterial; on the ground that it does not tend to show any breach in the contract by the defendants in this action, or either of them; on the ground that there is nothing in the complaint to show that the attachment was gotten out maliciously or without probable cause, or that the complaint does not sufficiently state that it was gotten out maliciously or without probable cause, and that the complaint does not sufficiently state a cause of action by reason of the getting out of the attachment without probable cause or maliciously, and upon the ground that it is not an action which is brought upon the bond given upon the issuing of the attachment or the injunction; and on the further ground that the complaint not having that set up a performance of the contract by the plaintiff has not been proven by the defendant, and if it would be admitted upon the theory that it would be an excuse for nonperformance it is premature.

"The Court: I am inclined now to sustain the objection.

"Mr. Hereford: Further, if your honor pleases, the issuance of the attachments and injunctions prevented us from shipping the ore and extracting the ore, and I offer to show also that the garnishment prevented us from the right to take our own money and pay our employees, so that we could go ahead

with the contract, and that we were unable to go ahead with the contract by reason of it.

"The Court: Counsel has stated in connection with this offer that one of the purposes of the offer is to show an excuse for the nonperformance of certain requirements of the contract, or I do not correctly understand you. That is one of the purposes of your offering this testimony, as I understand you. Now, I am inclined to this view that, you not having pleaded nonperformance and excuse, you may not at this time show it. I will rule against you on the merits. I do think this might be admissible for the purpose of showing nonperformance, but that you, not having pleaded nonperformance and excuse, may not show it at this time.

"Mr. Hereford: Then we make the same offer for the general purposes of the case, and for the purpose of showing that we were deprived thereby, by the different acts stated, of the right to extract the ore and obtain $12 a ton therefor, and of the benefits we were to be entitled to under the contract without breaking the contract.

"Mr. Ives: We object to that on the same grounds stated before.

"The Court: I shall sustain the objection. Your remedy, I think, is upon the injunction bond. I have ruled on that to this effect. It is not admissible at this time to show nonperformance. In your complaint you have not alleged nonperformance and excuse; you are not now entitled to show it.

"Mr. Hereford: We do not offer this to prove nonperformance.

"The Court: And you do not offer it as an excuse for nonperformance?

"Mr. Hereford: I offer it as an excuse for nonperformance, as proof of nonperformance, and a deprivation of certain rights.

"The Court: I shall rule adversely to you."

No request having been made to amend the complaint to conform to the proof offered, although the limitations of the complaint were thus directly brought to the attention of counsel, we think, on the pleadings as they stood, the trial court could not do otherwise than to refuse to admit the record in the attachment suit, and the further proof that was offered

to show that the attachment covered all the funds of the company and so did in fact prevent the deposit required.

The evidence of the plaintiff showed at the close of its case on the 25th of July the company was ousted from the premises, and the damages suffered by it thereby. This was a clear breach of the contract for which such damages might be recovered by the company, if at the time they had the legal right to maintain the claim. But apart from the limitations of the complaint, the evidence of the plaintiff also affirmatively showed that the company itself had prior to the ouster failed on its part to live up to the requirement of the contract, in that the deposit of the ore proceeds had not been made as required, and no excuse therefor had been pleaded or proved. The company, having elected to continue under the contract after the alleged acts of interference and hindrance by reason of the injunction and attachment suit, was bound to perform its covenants or plead and prove excuse for failure so to do, and in default thereof, having itself committed the first breach of the contract, it could not maintain this action against the defendants for their subsequent breach of ouster. The trial court was therefore right in holding that on the pleadings and on the proof the company had not made out a cause of action, and in directing a verdict for the defendants. *Norrington* v. *Wright,* 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; *Loudenback* v. *Tennessee Co.,* 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402.

The judgment of the district court is affirmed.

SLOAN, DOAN, and NAVE, JJ., concur.